# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TERRY KLEPAC, individually and on behalf of all others similarly situated; | Case No.: |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| FORD MOTOR COMPANY; | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Terry Klepac, individually and on behalf of the other members of the below-defined proposed nationwide and statewide classes (collectively, the "Class"), hereby allege against Ford Motor Company ("Defendant" or "Ford"), upon personal knowledge as to himself and his own acts, and as to all other matters based upon investigation, as follows:

## I.    <u>NATURE OF THE CASE</u>

1.    Plaintiff brings this case, seeking damages and equitable relief, individually and on behalf of the other Class members, each of whom purchased or leased one or more model year 2019 Ford F-150 trucks and model years 2015-2019 Ford Expeditions and Lincoln Navigators equipped with a 2.7L, 3.5L, 5.0L, 6.2L, or other engine equipped with a Hitachi step-bore master cylinder (the "Class Vehicles").

2.    Each of the Class Vehicles contains a defective front brake master cylinder ("Master Cylinder") that places the Vehicles at risk of suddenly and unexpectedly losing braking ability.

3.    A brake master cylinder is an essential part of hydraulic brake systems (the "Brake System") that control the amount of brake fluid pushed to brake calipers located on each wheel. When properly functioning, the Master Cylinder ensures that enough hydraulic pressure from the brake fluid is supplied to the calipers so that they

1

can clamp shut on the wheel rotors in response to the driver's application of the brake pedal, causing the vehicle to slow or stop.

4. The Brake System in the Class Vehicles is defective, because the Master Cylinder's seals fail to maintain pressure in at least two ways. First, the rearmost seal loses its sealing capabilities, causing pressurized brake fluid to leak from the Master Cylinder reservoir into the brake booster ("leak into booster," "LIB," or "external leak"). Second, the middlemost seal loses its sealing capabilities, causing pressurized brake fluid to bypass, or recirculate, internally ("bypass" or "internal leak"). Both LIB and bypass cause loss of hydraulic brake pressure, longer pedal travel, and extended stopping distances, even during normal and expected use and conditions (the "Brake System Defect").

5. The Brake System Defect is present in the Class Vehicles from the time they are first produced and is thus covered by Ford's 36,000 mile "Bumper to Bumper" warranty.

6. All Class Vehicles are equipped with the same, or substantially similar, step-bore brake Master Cylinder made by Hitachi, as confirmed by documents and written responses Ford provided to the National Highway Traffic Safety Administration ("NHTSA") as part of its investigation into the Brake System Defect.

7. Owners and lessees of Class Vehicles, including Plaintiff, have experienced sudden loss of braking force in life-threatening situations, such as while

driving on highways or in congested traffic, and have recounted suffering collisions, rolling through stop signs and red lights, as well as suffering vehicle runaway on inclines and open roads due to brake failure caused by the Brake System Defect.

8. Prior to sale or lease of the Vehicles at issue, Ford knew of the Brake System Defect through sources such as pre-release evaluation and testing; repair data; replacement part sales data; early consumer complaints made directly to Ford, collected by NHTSA's Office of Defect Investigation ("ODI"), and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Ford dealers; and other internal sources, such as Ford's communications. Yet despite this knowledge, Ford failed to disclose and in fact actively concealed the Brake System Defect from Class members and the public and continued to market and advertise the Class Vehicles.

9. Based on the records Ford provided NHTSA, Ford knew of the Brake System Defect as early as 2013.

10. Moreover, scores of complaints documenting the effects of the Brake System Defect have been submitted to NHTSA, as well as other websites and Ford owner forums. These complaints represent only a small fraction of the number of actual incidents experienced by consumers.

11. Beginning with model year 2013 F-150s, there was a dramatic spike in online complaints and warranty claims for loss of braking power due to the Brake

System Defect. Despite this, Ford continued installing the same or substantially similar Master Cylinder in the Class Vehicles for the entire product generation without disclosing the risk and severity of the Brake System Defect.

12.     The rash of complaints concerning the loss of braking power, including in potentially deadly circumstances, has continued unabated in the Class Vehicles. Purchasers who complain to Ford about the effects of the Brake System Defect are frequently told by Ford service professionals that failure events are commonplace among the Class Vehicles.

13.     In February 2016, NHTSA ODI opened a preliminary evaluation into reports of brake fluid leaking from the Master Cylinder in 2013-2014 Ford F-150s with 3.5L GTDI engines.

14.     In response, in May 2016, Ford Motor Company issued safety recall 16S24 (the "2016 Recall") to address loss of the front brake circuit function in a subset of model year 2013 and 2014 Ford F-150s—specifically, those F-150s with 3.5L EcoBoost engines that were built between August 1, 2013 and August 31, 2014.

15.     In the 2016 Recall, Ford *admitted* the existence of the Brake System Defect. Ford cited risk of a "compromised" primary cup seal and the corresponding loss of brake fluid "into the brake booster." The recall also notified dealers that "the driver may experience a change in brake pedal travel and feel, and reduced brake

function in the front wheels. . . ." Ford warned, "[r]educed brake function in the front wheels can extend stopping distance, increasing the risk of a crash."

16.     Ford announced the 2016 Recall through its website on May 25, 2016. In the announcement, Ford stated, "[t]he brake fluid leak affects brakes to the front wheels only and does not affect rear wheel braking."[1] Separately, Ford notified its dealers on September 29, 2016 that the Brake System Defect affected only the front brakes and that rear brake function was undisturbed.[2] Both statements are false. Specifically, complaints of total brake loss far exceed complaints of partial brake loss. Consumers consistently reported total loss of braking function rather than Ford's claim of partial loss.

17.     The 2016 Recall was grossly inadequate. Not only did the recall fail to address all affected model year 2013-2014 F-150s, it did not address any model year 2015-2019 vehicles, even though all model year 2013-2019 F-150s vehicles share the same Master Cylinder as the recalled vehicles. Nor did it address the Ford Expedition or Lincoln Navigator vehicles, which are equipped with "identical"

---

[1] See Ex. A, *Ford Motor Company Issues One Safety Recall and One Safety Compliance Recall in North America* (May 25, 2019) https://media.ford.com/content/fordmedia/fna/us/en/news/2016/05/25/ford-motor-company-issues-one-safety-recall-and-one-safety-compl.html (last visited January 23, 2023).
[2] See Ex. B, *Safety Recall 16S24 Letter to Authorized Dealerships* (September 29, 2016), https://static.nhtsa.gov/odi/rcl/2016/RCMN-16V345-1450.pdf (last visited January 23, 2023).

Master Cylinders, per Ford's submission to NHTSA. Further, the 2016 Recall fails to address or acknowledge bypass. And even though Ford acknowledges LIB in this small subset of Class Vehicles, the recall provides an ineffective remedy even for the vehicles that it does address. It merely calls for the replacement of the Master Cylinder with a new Master Cylinder of the same design.

18.    After the 2016 Recall, NHTSA launched a Recall Query on September 28, 2016, which is a formal investigation to the scope and adequacy of the 2016 Recall.

19.    Based on this investigation, Ford issued recall 20V-332, its second Brake System Defect recall, in 2020 ("2020 Recall"). The 2020 Recall covered only 2014-2017 F-150 trucks equipped with the 3.5L GTDI engine, and failed to include the Class Vehicles with the same defective Master Cylinder installed in other engine packages. Furthermore, the 2020 Recall failed to address the bypass failure mode.

20.    Following the 2020 Recall, NHTSA left the Recall Query open to continue to monitor the scope and adequacy of Ford's two recalls, which led to recall 22V-150, Ford's third recall for the Brake System Defect, in 2022 ("2022 Recall"). The 2022 Recall covered the remainder of the 2017 F-150 trucks equipped with the 3.5L GTDI engine. For the first time, however, Ford also recalled the 2016-2017 Ford Expedition and Lincoln Navigator vehicles built from July 20, 2015 through January 31, 2017 equipped with the 3.5L GTDI engine. The 2022 Recall still failed

to include all Class Vehicles with the same defective Master Cylinder installed in other engine packages, and it failed to address the bypass failure mode altogether.

21.    Consumers who experience brake failure outside of the warranty period and in vehicles not subject to the Safety Recall are forced to pay out-of-pocket to have the defective parts replaced. Replacing the defective parts can cost thousands of dollars.

22.    The Brake System Defect inhibits Plaintiff's and the other Class members expected, comfortable, and safe use of their Vehicles, and exposes them to the risk of serious injury resulting from sudden brake failure. The Defect also requires Class members to pay for equally defective replacement parts that are themselves substantially likely to fail.

23.    Despite its awareness of the Brake System Defect, Ford sold over a million Class Vehicles. Ford did so despite knowing that the dangerously unreliable Master Cylinders fail suddenly and unexpectedly, posing a safety hazard to Plaintiff, the other Class members, and others sharing the road with Class Vehicles.

24.    As a result of Ford's unfair, deceptive, and fraudulent business practices, Plaintiff and the other Class members were damaged in that they purchased Class Vehicles that they would not have purchased, or at least paid more for their Class Vehicles than they would have paid, had they known about the Brake System Defect. Furthermore, Plaintiff and Class members have incurred, and will

continue to incur, out-of-pocket unreimbursed costs and expenses relating to the Brake System Defect.

## II. JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and (d) because Plaintiff is a citizen of a different state than Defendant, there are more than 100 Class members nationwide, and the amount in controversy for the Class exceeds $5,000,000 exclusive of costs and interest.

26.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

27.    This Court has personal jurisdiction over Ford because Ford has its principal place of business in the State of Michigan and in this district. Moreover, Ford is authorized to do business in this District and conducts substantial business in this District.

28.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Ford resides in this district. Additionally, Ford has marketed, advertised, sold, and leased Class Vehicles within this district.

## III. PARTIES

### A. Plaintiff

29.    Plaintiff Terry Klepac is a citizen of Texas and a resident of Bryan, Texas. Mr. Klepac owns a 2019 F-150, which he purchased new from an authorized

Ford dealership – College Station Ford in College Station, Texas – December 9, 2019.

30.    Prior to purchasing his F-150, Mr. Klepac was exposed to and reviewed Ford's promotional materials regarding the vehicle and interacted with at least one sales representative at an authorized Ford dealership. However, Ford did not disclose the Brake Defect through any of these avenues.

31.    Through his exposure to Ford's advertisements, promotional materials, and Ford's other public statements, Mr. Klepac was aware of Ford's uniform and pervasive marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed, based on Ford's uniform and pervasive marketing message, that he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. Neither Ford, nor any of its agents, dealers, or other representatives informed Mr. Klepac of the existence of the Brake Defect prior to his purchase of the vehicle.

32.    On August 14, 2022, Mr. Klepac and his wife were driving home when the brakes on his F-150 completely failed. While traveling at a speed of no more than 20 MPH, Mr. Klepac could not stop his truck no matter the amount of force he applied to the brake pedal. Instead of pulling into their driveway under control, Mr. Klepac and his wife slammed into the front of their home. No dash warning lights

illuminated prior to the impact. The impact caused significant damage to both the vehicle and their home. Mr. Klepac's odometer read 28,000 miles at the time of the collision caused by the Brake System Defect.

33.     Mr. Klepac's F-150 was taken to an independent technician who diagnosed the cause of the brake failure to be the Brake System Defect.

34.     Mr. Klepac's F-150 was never recalled, despite being equipped with the same or substantially similar Master Cylinder included in Ford's three recalls.

35.     The Brake System Defect creates a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury to Mr. Klepac, other Class members, and others sharing the road or nearby at the time of a failure. At no time did Ford inform Mr. Klepac of the seriousness of the Brake System Defect or recommend that he discontinue use of his vehicle until there is an adequate repair.

36.     Mr. Klepac has suffered an ascertainable loss resulting from Ford's omissions associated with the Brake Defect including, but not limited to, loss of the benefit of his bargain.

37.     Ford failed to disclose the Brake System Defect to Mr. Klepac before he purchased his F-150, despite Ford's knowledge of the defect, and Mr. Klepac, therefore, purchased his F-150 with the incorrect understanding that it would be a safe and reliable vehicle. Had Mr. Klepac known about the Brake System Defect, he

would not have purchased his F-150, or certainly would not have paid as much for it as he did.

38.    At all times, Mr. Klepac, like all Class members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

## B.    **Defendant**

39.    Defendant Ford Motor Company is a Delaware corporation with its principal place of business at One American Road in Dearborn, Michigan. Ford is a citizen of the States of Delaware and Michigan.

40.    At all times relevant herein, Defendant Ford engaged in the business of designing, manufacturing, marketing, warranting, distributing, selling, and leasing automobiles, including the Class Vehicles, throughout the United States.

## IV.   **FACTUAL ALLEGATIONS**

41.    Plaintiff is informed and believes that, because of the Brake System Defect, the Brake Systems in his Class Vehicle and all other Class Vehicles are predisposed to external and internal leaks, resulting in a loss of hydraulic pressure and sudden brake failure under normal-use conditions that would not cause non-defective Brake Systems to fail.  This dangerous defect compromised the Class members' comfort, safety, and enjoyment of Class Vehicles, and caused them to pay out-of-pocket to replace broken Brake System parts with equally defective

replacement parts, leaving their Brake Systems substantially likely to incur repeated failures.

42. The Class Vehicles all have the same or substantially similar Master Cylinders. For example, in its response to NHTSA's Recall Query, Ford provided Appendix K, which confirms that all F-150 trucks with a gross vehicle weight rating of 6,601 to 7,850 are equipped with the same master cylinders, including the 3.5L GTDI, 2.7L, 3.5L TiVCT, 5.0L, and the 6.2L. Ford also stated in Appendix I provided to NHTSA that the Ford Expedition and Lincoln Navigator master cylinders are "identical." Thus, the Brake System Defect is a uniform defect that exists throughout the Class Vehicles. This is also evident from the uniformity of the complaints, and diagnoses, which show brake failure and Master Cylinder leakage including at extraordinarily low mileages.

## A. __The Brake System Defect__

43. A master cylinder is the part in vehicle braking systems that controls the amount of brake fluid sent to the brake calipers in response to the driver's compression or release of the brake pedal.

44. As the driver depresses the brake pedal, pistons within the master cylinder slide forward within their bore. As the pistons slide, they force brake fluid toward the calipers, causing an increase in hydraulic pressure.

45.     The hydraulic pressure activates larger pistons connected to the brake calipers, causing them to clamp down on the wheel rotors, stopping wheel rotation. Upon release of the brake pedal, brake fluid pressure decreases as the fluid travels back toward the master cylinder and its reservoir via the brake lines.

46.     A master cylinder comprises a metal housing divided into two chambers, which each house a single piston that controls the flow of brake fluid through the brake lines, to and from the brake calipers. A plastic reservoir sits atop the housing and stores brake fluid required to drive the hydraulic braking system.

47.     All Class Vehicles use the same or substantially similar Hitachi step-bore master cylinders.

48.     The image below depicts a typical Master Cylinder and its associated elements:



49.     Master cylinders must handle brake fluid pressures of up to 1,500 pounds per square inch (PSI). A loss of brake fluid will result in a loss of hydraulic pressure, and thus a loss in braking force.

50.     The pistons within a master cylinder are fitted with piston cup seals, which are responsible for keeping the brake fluid within the master cylinder's bore and preventing the fluid from escaping upstream toward the brake booster (a mechanism connected to the master cylinder that provides a pneumatic boost to the braking force applied by the driver) and the pedal linkage. Properly fitted piston cup seals are required to maintain hydraulic pressure within each (front and rear) brake circuit.

14

51.     The Master Cylinder Ford uses in the Class Vehicles is not adequately designed to contain brake fluid and pressure. As a result, brake fluid is able to escape from the Master Cylinder and leak into other components, including the brake booster, in some cases, or leak internally, in other cases.

52.     The external Leak into Booster involves sudden failure of the rearmost pressure seal, which allows brake fluid to escape the master cylinder and flow into the brake booster, depriving the brake system of requisite brake fluid volume and hydraulic pressure. Once the master cylinder's fluid volume falls below minimum requirements, hydraulic brake pressure is lost and does not return.

53.     The internal Bypass leak involves sudden failure of one or more inner pressure seals, either due to rolling, lifting, or tearing. These inner pressure seals are delicate rubber components that must be intact and properly seated to direct brake fluid pressures to the four, wheel calipers. Compromise to their integrity or positioning/seating causes the master cylinder to suddenly lose control of hydraulic pressures and braking force. Bypass occurs both intermittently and terminally in Class Vehicles.

54.     When this happens, the Brake System cannot generate enough hydraulic pressure effectively to apply the front and rear brakes. The results of this failure can include the brake pedal depressing to the floor of the vehicle, brake warning light activation due to low level of fluid (in the case of bypass, no warning

15

light is illuminated), and the driver experiencing a total or reduced loss of ability to brake the vehicle.

55.    Ford knew or should have known that having a defectively designed Brake System, including an insufficiently sealed Master Cylinder, could lead to loss of pressure and subsequent Brake System failure under normal use and conditions.

56.    The Master Cylinder failure frequently occurs at low mileages, within the warranty period.

57.    Plaintiff and the other Class members purchased or leased their Class Vehicles for the purpose of providing safe and reliable transportation, *i.e.*, to safely operate those vehicles on roadways.

58.    Brakes, along with a safe and effective braking system, are fundamental and essential core components of any vehicle. A vehicle without a functioning braking system cannot be safely operated on the road.

59.    A vehicle that lacks an effective braking system puts its driver and passengers at an ever-present risk of suffering serious bodily injury, including death, and/or causing others to suffer serious bodily injury, including death. Brake failure can also result in property damage, including to other nearby vehicles and to buildings, as happened to Plaintiff Klepac's house.

60.    Thus, a vehicle without a safe, reliable, and effective braking system is unfit for the purpose of providing transportation.

61.    The presence of the Brake System Defect means that the Brake System in the Class Vehicles is unsafe, unreliable, and ineffective because at any time it could fail and cause an unexpected loss in braking ability.

62.    Because Ford manufactured the Class Vehicles without a safe, reliable, and effective braking system, the Brake System Defect renders the Class Vehicles unfit for their ordinary purpose of providing transportation.

63.    As a result of the Brake System Defect, owners or lessors of Class Vehicles must either cease driving their trucks (the purpose for which they purchased them), or else risk a complete failure of their vehicle's braking system—and potentially causing or incurring serious bodily injury or property damage—every time they get behind the wheel.

64.    Not only does the Brake System Defect render the Class Vehicles unmerchantable and unfit for the purpose of providing transportation because they violate consumer expectations and expose them to these harms—the Class Vehicles are also unfit and unmerchantable because an operational braking system is required by law. *See, e.g.*, 49 C.F.R. § 571.135.

65.    The Brake System Defect substantially impairs the use, value, and safety of the Class Vehicles and renders the Class Vehicles substantially less drivable, less safe, and less useful.

66.     All Class Vehicles are unmerchantable, unfit for the purpose of providing transportation, and are substantially less drivable, less safe, and less useful as a result of the Brake System Defect—even if the Brake System Defect does not manifest itself in a particular vehicle.

67.     Moreover, Ford's replacement of faulty Brake System parts with equally defective replacement parts leaves the Brake System substantially likely to experience repeated failure and thus does not remedy the Brake System Defect.

68.     When Ford refuses to cover the cost to repair the Brake System, consumers are forced to pay thousands of dollars out of pocket, yet the repair is done with the same defective Ford parts, thus consumers still are subjected to future risk of failure.

**B.      The Brake System Defect Causes Front and Rear Braking Loss Creating A Serious Safety Risk to Vehicle Drivers and Occupants.**

69.     The Brake System Defect poses a safety risk to Vehicle occupants because a Vehicle with an improperly- or non-functioning Brake System subjects occupants to the risk that the Brake System will not stop or slow the Vehicle when the driver depresses the brake pedal. An improperly functioning, inoperative, or defective Brake System poses a serious risk of injury or death to the occupants of the Vehicle or others.

70.     The Brake System Defect causes total or significant loss in brake function. This loss can occur suddenly and without warning due to rapid loss of

brake fluid in the event of a master cylinder failure. Due to the universal nature of the Brake System Defect, any Vehicle is at risk of losing braking power with no notice. In short, the Brake System Defect creates a serious risk to the safety of Class Vehicle occupants and others on the road.

71.     On August 14, 2022, Plaintiff was driving home with his wife when his brakes failed, causing him to collide with his house. Plaintiff has video evidence reflecting the incident from a Ring camera system.

72.     Drivers of pre-Class F-150 trucks (pre-Class means the model year F-150 trucks preceding the Class that are covered by the *Weidman v. Ford Motor Co.*,[3] class but are equipped with the same or substantially similar Master Cylinders), also reported losing all braking ability with no warning. The following represent a few examples:

- *NHTSA ID Number 11124502, 2013 Ford F-150*

  BRAKE FLUID LEVEL SENSOR CAME ON WHILE DRIVING ON INTERSTATE AT HIGHWAY SPEEDS. NO BRAKES AFTER THAT POINT. COASTED OFF THE HIGHWAY, CHECKED FLUID LEVEL, EMPTY. ADDED 20 OZ TO MAX FILL LEVEL, LEAKED OUT INSIDE OF 6 MINUTES. TOWED TO DEALERSHIP, REPLACED BRAKE MASTER CYLINDER UNDER FORD RECALL 16S24. NOT SURE BOOSTER WAS REPLACED. ISSUE IS I CHECK MY FLUID LEVEL EVERY WEEK BEFORE GETTING ON THE HIGHWAY, I KNEW THERE

---

[3] 18-cv-12719 (E.D. Mich. Apr. 8, 2022) (the *Weidman* court certified a class of "2013-2018 Ford F-150 equipped with a Hitachi made step-bore master cylinder not included in Safety Recall 20S31 in Alabama, California, Florida, Georgia and Texas" for determination of certain issues.).

WAS A RECALL ISSUED MARCH 2017, BUT WITH MY FLUID LEVEL STANDING FULL, DIDN'T THINK IT WAS AN ISSUE, I HAD PLANS TO DO THE RECALL IN OCT. THIS IS NOT A SLOW LEAK, THIS IS A FULL ON SEAL FAILURE WITH DRAINING OF THE RESERVOIR INSIDE 6 MINUTES WITH THE TRUCK PARKED. WHEN THAT LIGHT COMES ON, YOU ARE DONE WITH BRAKES. I JUST WANTED YOU TO KNOW THIS IS A SUDDEN AND TOTAL LOSS OF FLUID AND NOT JUST A "LEAK". AND THERE ARE NO REAR BRAKES, YOU DON'T JUST LOOSE THE FRONT BRAKES, YOU HAVE ZERO BRAKES. DIDN'T HAVE TO APPLY THE EMERGENCY BRAKE, WAS ABLE TO COAST TO A STOP IN THE PARKING LOT OF A GAS STATION.

- *NHTSA ID Number 10886011, 2013 Ford F-150*

  BRAKES FAILED WHILE 2013 ECCOBOOST 3.5L F-150 WAS PARKED. STEPPED ON BRAKE PEDAL TO SHIFT OUT OF PARK AND PEDAL WENT TO THE FLOOR. NO PRIOR INDICATION OF A PROBLEM. LOOKED AT MASTER CYLINDER FLUID LEVEL AND COMPLETELY EMPTY. NO BRAKES AT ALL, FRONT OR BACK. MOVED TRUCK TO FORD DEALER FOR REPAIR. DEALER DID NOT HAVE PARTS AND HAD TO SPECIAL ORDER THEM.

73.     According to another complaint filed with NHTSA ODI, one consumer experienced sudden brake failure, and as a result "crossed the street, went up the curb, and struck my neighbor's landscape wall, damaging it severely." A Ford dealer later identified the problem as a defective master cylinder. NHTSA ODI #10809601 (incident date May 1, 2015).

74.     Another consumer reported colliding with an eighteen-wheeler truck after experiencing sudden brake failure. NHTSA ODI #10855278 (incident date January 13, 2015).

75.     As partially detailed below, numerous other reports have been made to NHTSA and reported in the media regarding Brake System failures in pre-Class and Class Vehicles.

76.     Moreover, Ford submitted information to NHTSA related to wrecks or collisions in the pre-Class and Class Vehicles caused by the Brake System Defect in Appendix D, the earliest reported in January 2016.

**C.     Ford Knew of the Brake System Defect Prior to Sale or Lease of the Class Vehicles.**

77.     On information and belief, Ford learned of the Brake System Defect at least as early as 2013, and certainly well before Plaintiff and Class members purchased or leased their Class Vehicles, through sources such as pre-release evaluation and testing; repair data; replacement part sales data; early consumer complaints made directly to Ford, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Ford dealers; as well as through other internal sources unavailable to Plaintiff prior to discovery.

78.     Internal documents provided by Ford to NHTSA confirm Ford's knowledge of the Brake System Defect.

79.     Within those NHTSA documents, Appendix G includes warranty data charts reflecting the number of pre-Class and Class Vehicles Ford repaired for the Brake System Defect by the date of repair. These charts indicate that Ford started

receiving Brake System Defect warranty claims as early as 2013, and continued throughout the relevant timespan. The data also reflects Ford received warranty claims for all Class Vehicles, not just the 3.5L GTDI it selectively recalled, including the Lincoln Navigator and Ford Expedition vehicles, and that Ford received both LIB and bypass claims.

80.     Appendix G also reflects a timeline of corrective actions that Ford provided NHTSA. The earliest date Ford identified that it implemented a corrective action was July 24, 2013.

81.     On June 16, 2015, Jessica Ruiz, an engineer at Ford's Dearborn Truck Plant, sent an email entitled: "Hitachi Master Cylinders – F150 ECBs and Concerns," marked "High" importance. She stated: "Master Cylinder leaks are getting a lot of attention at Ford."

82.     On July 21, 2015, Ms. Ruiz sent an email entitled: "Hitachi – Master Cylinder On Line Leaks at DTP." She stated: "Hitachi (Farmington Hills) found the root cause of the master cylinder leakers we have been finding at DTP. More parts failed on the line this morning and they completed their investigation with those samples."

83.     In September 2015, Alejandro Rojas with Hitachi sent an email to his Hitachi colleagues stating: "[W]e have a big brake issue at [Ford's Dearborn Truck

Plant]. The issue is a leak in the master cylinder. There are between 20-25 vehicles that have failed."

84.     In July 2016, Martin Kapanowski, a Ford engineer, sent an email to his colleagues stating: "[I]t has been stated that [master cylinder] repairs are increasing. We are having Hitachi in to discuss."

85.     In September 2016, Dan Williams, an engineer at Ford's Kansas City Assembly Plant, sent an email entitled: "Master Cylinder reservoir seal partially not seated." He stated: "Are you already aware of what looks like rolled seals on master cylinder assemblies that [Dearborn Truck Plant] found? If that is indeed the defect, this is something we have seen in the past."

86.     In October 2016, Saif Siddiqui, an engineer at Ford's Dearborn Truck Plant, sent an email to Hitachi regarding a Hitachi master cylinder failure in a 2016 F-150. He stated: "I think we should start sending the [Master Cylinder] claims in package form instead of sending separately. This is the fourth one from [Dearborn Truck Plant] alone."

87.     Also in October 2016, Mr. Siddiqui emailed his colleague, Jonathan Harris, regarding Hitachi mastery cylinder warranty claims, asking: "Are all these [master cylinder] claims from today or are you catching up some old ones?" Mr. Harris responded: "No believe it or not they are all from today. I'm about ready to scream I can't believe all of these hit at one time." Mr. Siddiqui responded:

"Amazing. Something definitely got messed up at Hitachi." Mr. Harris responded:
"I've asked for someone from the plant to come down for the PIC this is going to be
bloody."

      1.      **Ford's Knowledge of the Brake System Defect Gained from Pre-Release Design, Manufacture, Engineering, and Testing Data**

88.    During the pre-release process of designing, manufacturing,
engineering, and testing the Class Vehicles, Ford necessarily would have gained
comprehensive and exclusive knowledge about the Class Vehicle's Brake Systems,
particularly the basic engineering principles behind the construction and function of
the systems and the expected conditions and uses the systems would encounter in
ordinary use.

89.    An adequate pre-release analysis of the design, engineering, and
manufacture of the Brake Systems in the Class Vehicles would have revealed to Ford
that the brake master cylinders were defective and susceptible to leaking brake fluid
and failing to provide adequate braking ability for the Vehicles.

90.    Ford is experienced in the design and manufacture of consumer
vehicles. As an experienced manufacturer, Ford conducts tests, including pre-sale
durability testing, on incoming components, including the Brake Systems, to verify
the parts are free from defect and align with Ford's specifications. This is particularly

true of components and systems which Ford intends to put in millions of its vehicles, as the company intended with the Class Vehicles.

91.    Ford has extensive proving grounds and testing facilities to ensure that vehicle components meet specifications and to test for unforeseen defects in design and manufacture.

92.    As a result, discovery will show that Ford's durability and reliability testing, done both before the Brake Systems were built into the first of the Class Vehicles and after they were installed in Class Vehicles, revealed the existence of the Brake System Defect to Ford.

### 2.    Ford's Knowledge of the Brake System Defect from Internal Data

93.    Ford also knew or should have known about the Brake System Defect because of the large number of claims for Brake System repairs and part replacements made during the Class Vehicles' warranty periods.

94.    Consumers complain that the Brake System Defect often causes Brake System failures at low mileages, within the warranty period.

95.    Ford collects, reviews, and analyzes detailed information about repairs made on vehicles still under warranty at its dealerships and service centers, including the type and frequency of such repairs. Complete data on such repairs is exclusively within Ford's control and unavailable to Plaintiff without discovery.

96.     Ford also knew or should have known about the Brake System Defect because of the higher-than-expected number of replacement Brake System parts ordered from Ford, which should have alerted Ford that this was a defect affecting a wide range of its Vehicles.

97.     Ford service centers use Ford replacement parts that they order directly from Ford. Independent repair shops and consumers doing repairs themselves also purchase replacement parts directly from Ford. Therefore, Ford would have detailed and accurate data regarding the number and frequency of replacement part orders. The ongoing high sales of replacement Brake System parts was certainly known to Ford and should have alerted Ford that its Master Cylinder parts were defective and causing Class Vehicles' Brake Systems to fail.

98.     As the consumer complaints below demonstrate, consumers often waited days or weeks before their vehicles could be repaired while the dealership was waiting for parts.

99.     One of Ford's internal processes for reviewing complaints related to defects like the Brake System Defect is Ford's Critical Concern Review Group (CCRG). When Ford becomes aware of a safety-related defect—whether through warranty repair data, customer service reports, or other sources—the CCRG will investigate the issue, review and assess the problem, and recommend corrective actions including recalls.

100. On information and belief, the level of warranty claims, consumer complaints, and comments from Ford dealers and technicians would have informed the CCRG and other Ford employees and quality-control entities of the Brake System Defect.

### 3. Ford's Knowledge of the Brake System Defect from Class Member Complaints Collected by NHTSA's Office of Defect Investigations

101. Beginning with model year 2013 F-150s, online resources reveal an exceptionally high number of consumer complaints regarding the Brake System Defect.

102. Federal law requires automakers like Ford to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including disclosure of field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

103. Thus, automakers should (and do) monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers' ongoing obligation to identify potential defects in their vehicles, such as failures of Brake Systems to apply the brakes as intended.

104. From its monitoring of the NHTSA databases, Ford knew or should have known of the many complaints about the Brake System Defect logged by

NHTSA ODI, and the content, consistency, and large number of those complaints

alerted, or should have alerted, Ford to the Brake System Defect.

105.   A sampling of the publicly available complaints lodged with NHTSA

ODI includes the following:

> TL* THE CONTACT OWNS A 2013 FORD F-150. WHILE
> DRIVING APPROXIMATELY 5 MPH, THE VEHICLE
> HESITATED TO STOP WHEN THE BRAKE PEDAL WAS
> DEPRESSED AND THE BRAKE FLUID WARNING INDICATOR
> ILLUMINATED. THE VEHICLE WAS TOWED TO A DEALER
> FOR DIAGNOSTIC TESTING WHERE IT WAS DIAGNOSED
> THAT THE MASTER CYLINDER AND BRAKE BOOSTER PUMP
> NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOT
> NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE
> MILEAGE WAS 8,000. (NHTSA ID 10632103, 2013 Ford F-150,
> Complaint Date September 10, 2014)

> TRUCK WAS PARKED SEVERAL HOURS IN SON-IN-LAWS
> DRIVEWAY. WIFE GOT IN TRUCK, AFTER CRANKING AND
> PLACING IN REVERSE, NO BRAKES! BACKED INTO SON-IN
> LAWS VEHICLE DAMAGING IT AND DAMAGING F 150. F 150
> STILL UNDER WARRANTY, TAKEN TO MULLINAX FORD
> MOBILE AL. FOUND MASTERCYLINDER DEFECT , FAILED
> GASKET CAUSED BRAKE BOOSTER TO FAIL. MASTER
> CYLINDER REPLACED BY MULLINAX FORD, MOBILE AL.
> *TR (NHTSA ID 10692723, 2013 Ford F-150, Complaint Date March
> 7, 2015)

> COMPLETE LOSS OF BRAKES. HAD TRUCK TOWED TO FORD
> DEALERSHIP. THEY DIAGNOSED DEFECTIVE MASTER
> CYLINDER AND BRAKE BOOSTER. WAS TOLD BY
> DEALERSHIP THAT THE PARTS ARE ON NATION WIDE BACK
> ORDER. THIS INDICATES THERE IS A SERIOUS PROBLEM
> AND THIS IS NOT AN ISOLATED INCIDENT. I AM BEING
> REQUIRED TO PAY BECAUSE VEHICLE IS NO LONGER
> UNDER WARRANTY. BRAKES SHOULD NEVER
> COMPLETELY FAIL. THIS COULD HAVE HAD

CATASTROPHIC RESULTS. IF FORD DOES NOT RECOGNIZE THIS ISSUE AND TAKE RESPONSIBILITY SOON AND FIX IT, SOMEONE WILL BE KILLED. (NHTSA ID 10724169, 2013 Ford F-150, Complaint Date 10724169)

TOTAL BRAKE FAILURE. STARTED VEHICLE AND WENT TO BACK UP AND BRAKE PEDDLE WENT TO THE FLOOR, LOW BRAKE FLUID LIGHT LIGHT CAME ON AS SOON AS THE PEDDLE HIT THE FLOOR. VEHICLE WAS SLOWLY MOVING BACKWARDS AND WOULD NOT STOP. TRIED PUMPING THE PEDDLE TO STOP THE TRUCK. USED PARKING BRAKE TO STOP VEHICLE TO AVOID BACKING INTO OTHER CARS BEHIND. CHECKED BRAKE FLUID LEVEL AND FOUND IT WAS ALMOST OUT, LESS THAN A ¼ INCH IN THE RESERVOIR. CHECKED ENTIRE VEHICLE AND NO LEAKS COULD BE FOUND CALLED CROSSROADS FORD IN CARY, NC AND THEY INDICATED I SHOULD FILL IT WITH DOT3 FLUID AND BRING IT IN. FILLED RESERVOIR TO MAX LINE AND PUMPED BRAKED A FEW TIMES UNTIL THEY WERE FIRM. DROVE TO THE DEALERSHIP, ABOUT 25 MILES. NO ISSUES GETTING TO THE DEALERSHIP OTHER THAN THE BRAKES WERE QUITE SPONGY AND NOT TOO RESPONSIVE. UPON INSPECTION AT THE DEALERSHIP, THEY REMOVED THE MASTER CYLINDER AND FOUND THE FLUID HAD FILLED THE BRAKE BOOSTER AND THE MASTER CYLINDER HAD FAILED.. THIS SEEMS TO BE A VERY SERIOUS PROBLEM, I'M VERY LUCKY I WASN'T KILLED OR KILLED SOMEONE IN AN ACCIDENT. VEHICLE WAS JUST A LITTLE OVER 500 OUT OF WARRANTY. (NHTSA ID 10725096, 2013 Ford F-150, Complaint Date June 13, 2015)

BACKED UP TO BOAT TRAILER. ATTACHED TRAILER TO F-150 PLATINUM. BRAKE PEDAL WENT TO THE FLOOR. CHECKED BRAKE FLUID LEVEL AND THERE WAS NO FLUID. ADDED (3) 6 OZ. BOTTLES. NO EXTERNAL LEAKS FOUND ANYWHERE. BLED BRAKE LINES TO GET VEHICLE HOME. DEALER FOUND THAT THE MASTER CYLINDER SEAL BLEW AND ALL THE BRAKE FLUID WENT INTO THE BOOSTER. BOOSTER ON BACK ORDER FOR 5 DAYS. I AM HAVING TO PAY TO HAVE BOOSTER REPLACED, SEAL, AND ABS

SYSTEM FLUSH. THIS WAS VERY DANGEROUS FOR ME AS I WAS TOWING MY 17FT BOAT UP A MOUNTAIN @ 7% GRADE FOR 17 MILES. I HAVE READ THE RECORDED COMPLAINTS FOR THIS SAME ISSUE AND IT APPEARS TO HAVE HAPPENED TO MANY PEOPLE OVER THE LAST 2 YEARS. FORD PLEASE FIX THIS. (NHTSA ID 10731327, 2013 Ford F-150, Complaint Date June 30, 2015)

STARTED AT 8K MILES. WHILE SITTING AT A STOP, THE PEDAL GRADUALLY GOES TO THE FLOOR (SOMETIMES). MOST TIMES IT DOES NOT. DEALER MECHANIC VERIFIED IT, CALLED FORD, THEY TOLD HIM ITS NORMAL!! SOMETIMES THE TRUCK WILL EVEN CREEP FORWARD. FORD TOLD TECH TO DO NOTHING. *TR (NHTSA ID 10622386, 2014 Ford F-150, Complaint Date August 14, 2014)

FIRST START AFTER SITTING OVER THE WEEKEND PUT IN REVERSE AND HAD ALMOST NO BRAKES 3.5 ENG. 2 MONTH OLD TRUCK AND SO MANY ISSUES. *TR (NHTSA ID 10622386, 2014 Ford F-150, Complaint Date December 6, 2014)

I WAS DRIVING HWY 290 IN HOUSTON, TX THE LOW BRAKE FLUID LIGHT CAME ON WITHIN AN ADDITIONAL 4 TO 6 MILES I LOST ALL MY BRAKES. LUCKY I DIDN'T PANIC AND WAS ABLE TO GET OFF THE HIGHWAY AND PULL INTO A STRIP CENTER AND USE THE EMERGENCY BRAKE TO STOP. THE BRAKES WOULD NOT EVEN STOP WHEN TRUCK WAS IDLING. I HAVE NEVER HAD BRAKES FAIL ESPECIALLY WITH A NEW TRUCK. I AM STILL LEARY ABOUT DRIVING A TRUCK WHOSE BRAKES FAILED COMPLETELY AND WILL PROBABLY NEVER GET THAT FEELING OUT OF MY HEAD. THE DEALERSHIP SAID THE MASTER CYLINDER FAILED AND PUSHED ALL THE FLUID INTO THE BRAKE BOOSTER. I CALLED FORD MOTOR COMPANY AND SPOKE WITH A LADY NAMED [XXX]. SHE SAID SHE WAS SORRY BUT PARTS FAIL AND THEY COULD NOT EVEN ISSUE AN EXTENDED WARRANTY FOR THE TRUCK. SHE DID OFFER A SERVICE PLAN FOR THE TRUCK. BUT I AM NOT LOOKING FOR SOMETHING FOR FREE I JUST WANT MY TRUCK COVERED AND FEEL SAFE IT IN WITH MY FAMILY. I AM VERY LUCKY

THERE WAS NO TRAFFIC AND DIDN'T WRECK OR HAVE MY SON IN THE CAR WITH ME. THIS COULD HAVE BEEN A TERRIBLE ISSUE AND SHOULD BE ADDRESSED BY FORD IN A MORE CONCERNING MANNER. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TR (NHTSA ID 10715103, 2014 Ford F-150, Complaint Date May 5, 2015)

APPLIED BRAKES TO SLOW DOWN GETTING OFF INTERSTATE I-85 AND THE PEDAL WENT TO THE FLOOR WITH NO WARNING OTHER THAN THE CHECK BRAKE FLUID LEVEL AFTERWARDS. I WAS ABLE TO GET IT STOPPED BY DOWNSHIFTING IT TO LOW, AUTOMATIC TRANSMISSION WITHOUT HITTING ANYTHING. FORD DETERMINED IT IS THE BRAKE BOOSTER AND MASTER CYLINDER AND THEY NEED REPLACED BUT THOSE PARTS ARE BACK ORDERED FOR BETWEEN 2 & 12 WEEKS. I WAS ALSO TOLD THAT FORD IS REPLACING THESE PARTS ON NEW F150S AND THAT IS WHY THE LONG BACK ORDER. (NHTSA ID 10725046, 2014 Ford F-150, June 12, 2015)

WHILE DRIVING ON THE INTERSTATE A WARNING FOR LOW BRAKE FLUID APPEARED ON THE DASH. SHORTLY AFTER I LOST PRESSURE IN THE BRAKE PEDAL WHEN TRYING TO BRAKE FOR SLOWER TRAFFIC. I WAS ABLE TO PUMP THE BRAKES TO SLOW DOWN ENOUGH AND WAS ABLE TO GET TO A NEAR BY GAS STATION. THEIR WAS NO BRAKE FLUID LEFT IN THE RESERVOIR AND AFTER ADDING MORE BRAKE FLUID THE RESERVOIR DRAINED WITHIN 5 MINUTES WITH NO VISIBLE LEAK. THE VEHICLE WAS TOWED TO THE DEALERSHIP. THE BRAKE MASTER CYLINDER HAD FAILED AND DRAINED ALL THE BRAKE FLUID INTO THE VACUUM BOOSTER. I WAS LUCKY THAT I ENOUGH ROOM TO PUMP MY BRAKES TO GAIN CONTROL, OTHERWISE THIS COULD HAVE RESULTED IN A MAJOR ACCIDENT. THIS PART SHOULD NOT FAIL IN THIS MANNER NOR AT 18000 MILE OF VEHICLE LIFE. THE MECHANIC AT THE DEALERSHIP CLAIMED HE HAS SEEN THIS ISSUES ON OTHER F150S TOO. (NHTSA ID 10725476, 2014 Ford F-150, Complaint Date June 16, 2015)

31

BRAKE LIGHT CAME ON WHILE DRIVING AT 65 MPH. IMMEDIATELY TESTED BRAKES AND FELT NORMAL APPLICATION. THREE MILES LATER APPROACHING A FOUR-WAY INTERSECTION, INITIATED SECOND PEDAL APPLICATION AND BRAKE PEDAL WENT TO FLOOR WITH NO ASSOCIATED BRAKING ACTION. USED PARKING BRAKE, GEAR DOWN-SHIFTING AND ROAD SHOULDER TO AVOID COLLISION WITH OTHER VEHICLES. SERVICE INSPECTION FOUND MASTER CYLINDER HAD LEAKED ALL FLUID FROM RESERVOIR INTO BRAKE BOOSTER AND INTO VACUUM LINE. REPLACED BRAKE BOOSTER, MASTER CYLINDER, VACUUM CHECK VALVE, AND VACUUM LINE.....UPDATED 10/20/15 *BF (NHTSA ID 10733023, 2014 Ford F-150, Complaint Date July 9, 2015)

TL* THE CONTACT OWNS A 2014 FORD F-150. WHILE DRIVING AT 35 MPH, THE LOW BRAKE FLUID WARNING LIGHT ILLUMINATED. THE CONTACT STATED THAT THE BRAKE PEDAL WAS DEPRESSED AND EXTENDED TO THE FLOOR. THE CONTACT WAS ABLE TO SLOW THE VEHICLE DOWN USING THE MANUAL TRANSMISSION AND THE EMERGENCY BRAKES. THE VEHICLE WAS TAKEN TO THE DEALER FOR DIAGNOSTIC TESTING AND INSPECTION. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 7,900. (NHTSA ID 10745004, 2014 Ford F-150, Complaint Date July 30, 2015)

AS I PULLED OUT OF MY DRIVEWAY AND CAME TO FIRST STOP THE BRAKE PEDAL WENT TO THE FLOOR. TOOK IT TO DEALER AND THE MASTER CYLINDER WAS BAD. (NHTSA ID 10734951, 2015 Ford F-150, Complaint Date July 18, 2015)

TL* THE CONTACT OWNS A 2015 FORD F-150. WHILE DRIVING APPROXIMATELY 20 MPH, THE BRAKE PEDAL WAS FORCEFULLY ENGAGED WITH BOTH FEET; HOWEVER, THE VEHICLE FAILED TO SLOW DOWN AND CRASHED INTO THE REAR OF THE PRECEDING VEHICLE. THE CONTACT INJURED BOTH LEGS AND KNEES, INCLUDING THE HIP AREA. THE

CONTACT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS NOT TOWED. THE VEHICLE WAS DRIVEN WITH CAUTION. THE DAY PRIOR TO THE CRASH, THE BRAKES WERE DEPRESSED NUMEROUS TIMES BEFORE COMING TO A STOP AND THERE WAS A DELAYED RESPONSE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 6,000. (NHTSA ID 10836611, 2015 Ford F-150, Complaint Date February 17, 2016)

SAW RECENT NEWS ARTICLE ABOUT F150 BRAKES..I PURCHASED MY 2015 F150 LAST MARCH 2015. WITH ONLY 980 MILES (YES 980) ON IT MY BRAKES BEGAN TO FADE OUT. ULTIMATELY THEY STOPPED WORKING AND THE VEHICLE WOULD NOT COME TO A STOP AS THE BRAKES CONTINUALLY FADED OUT. BROUGHT IT BACK TO FORD WHO RAN SEVERAL TESTS AND COULD NOT FIND OUT WHY THIS HAPPENED. THEY CONFIRMED THAT THERE WAS A PROBLEM BUT DID NOT KNOW WHY.THEY TOLD ME SAME. THE WESTERN U.S. FORD REPRESENTATIVE EVEN CALLED ME TO APOLOGIZE. ULTIMATELY THEY REPLACED MY ROTORS AND PADS, NOT CERTAIN WHAT ELSE THEY MAY HAVE REPLACED. I ASKED WHERE ALL THE PARTS WERE GOING THAT THEY REPLACED AND WAS TOLD BY THE REP THAT THEY WOULD BE SENT BACK TO THEIR ENGINEERS AND I WOULD MOST LIKELY NEVER HEAR WHY THE BRAKES FAILED. I DO NOT HAVE DOCUMENTATION. THE VEHICLE WAS PURCHASED AND SERVICED AT TOWNE FORD IN REDWOOD CITY CA. I CAN PROVE THIS OCCURRED BY ASKING THEM FOR MY WORK ORDER WHICH SHOULD BE IN THEIR SYSTEM IF NEEDED. (NHTSA ID 10839988, 2015 Ford F-150, Complaint Date March 4, 2016)

BRAKES WENT OUT WHILE DRIVING. PEDAL WENT COMPLETELY TO THE FLOOR. A WARNING LIGHT CAME ON INDICATING LOW FLUID. I TOOK THE TRUCK TO A LOCAL GARAGE AND THEY DETERMINED THAT THE MASTER CYLINDER HAD FAILED AND ALSO BRAKE FLUID HAD LOOKED INTO THE BOOSTER. THE BRAKE FLUID

RESERVOIR WAS COMPLETELY EMPTY. THE VEHICLE HAD BEEN PARKED FOR A FEW DAYS. WE DROVE THE VEHICLE 5 MILES WITHOUT ISSUE. VEHICLE WAS TOWED TO NEAREST FORD DEALER NEARLY 40 MILES AWAY. THAT FORD DEALER HAS FAILED TO BEGIN REPAIRS, CLAIMING THEY ARE BUSY AND CONSEQUENTLY IT WILL TAKE 4 OR MORE DAYS TO REPAIR. WE ARE 12 HOURS FROM HOME AND STRANDED BY THIS NEW PICKUP. THIS IS PRECISELY THE SAME ISSUE AS RAISED IN THE COMPLAINT WITH NHTSA ID NUMBER 10873438 (NHTSA ID 10876359, 2015 Ford F-150, Complaint Date June 24, 2016)

I WAS ON MY WAY TO WORK ONE MORNING WHEN I NOTICED MY BREAK PEDAL SEEMS TO BE GOING LOWER THAN NORMAL. AFTER DRIVING A LITTLE MORE IT SEEMED TO BE OK. AS I GOT ABOUT HALF WAY ACROSS HOUSTON, I WAS COMING T A RED LIGHT AND WHEN I HIT MY BREAKS THEY WENT COMPLETELY TO THE FLOOR AND I WENT THROUGH A RED LIGHT. LUCKILY IT WAS SO EARLY THAT THERE WAS NOT MUCH TRAFFIC. I CALLED ROADSIDE TO ROW MY TRUCK TO THE FORD DEALER TO FIND THAT THIS SEEMS TO BE AN ONGOING ISSUE WITH TRUCKS AROUND THIS YEAR MODEL, AND THE MASTER CYLINDER IS ON RECALL UNTIL (HOPEFULLY) AUG, 22. THAT'S IS A FULL MONTH WITHOUT MY TRUCK. THERE HAS CURRENTLY BEEN NO RECALLS ON THESE MODELS, BUT IF THERE IS NOT ONE SOON, SOMEONE IS GOING T GET SERIOUSLY INJURED OR EVEN KILLED WITH THIS DEFAULT. ( I ONLY HAVE 5600 MILES ON THIS TRUCK BY THE WAY). (NHTSA ID 10888026, 2015 Ford F-150, Complaint Date July 24, 2016)

THE PICKUP TRUCK IS NO OLDER THAN 3 MONTHS AND WHILE DRIVING ON THE EXPRESSWAY I SUDDENLY LOST FUNCTION OF MY BRAKES. THE BRAKE PEDAL WENT ALL THE WAY DOWN WITH NO BRAKE REACTION. THE MIDWAY FORD DEALERSHIP INFORMED ME THE MASTER CYLINDER BRAKE WAS DEFECTIVE. THANKFULLY NO ONE WAS INJURED, NOR ANY PHYSICAL DAMAGE TO PROPERTY; HOWEVER THE TRAUMATIC INCIDENT DID CAUSE ME ANGINA DUE TO MY HEART CONDITION. I WAS EXTREMELY

34

LUCKY TO HAVE BEEN ABLE TO HAVE CONTROLLED THE HEALTH CONDITION WITH NITROGLYCERIN. ALL I ASK IS THAT FORD TAKE THIS INCIDENT SERIOUSLY TO AVOID ANY FUTURE ACCIDENTS WHICH MAY POTENTIAL RESULT IN A FATALITY. I NO LONGER HAVE FAITH IN MY VEHICLE AND PREFER A DIFFERENT CAR MOVING FORWARD. (NHTSA ID 10862418, 2016 Ford F-150, Complaint Date May 1, 2016)

BRAKES COMPLETELY FAIL, WHEN I PUSHED THE BRAKE PEDAL DOWN. IT WENT STRAIGHT TO THE FLOOR WITH NO RESISTANCE. THIS HAS HAPPENED 4 TIMES. SOMETIMES PUMPING THE BRAKES HELPS. THE EMERGENCY BRAKE WAS USED TO STOP THE VEHICLE 2 TIMES. ONCE A SHARP SWERVE OFF THE ROAD WHILE PUMPING TO STOP. THE LAST TIME I COASTED TO A STOP. THERE SEEMS TO BE NO MATTER OF SPEED, TYPE OF STOP OR INCLINE IN COMMON. EXCEPT THE VEHICLE IS IN MOTION AND THE BRAKES WON'T WORK. I'M WAITING FOR A TOW TRUCK RIGHT NOW (NHTSA ID 10872737, 2016 Ford F-150, Complaint Date June 6, 2016)

6,500 MILES ON NEW VEHICLE AND BRAKES COMPLETELY FAILED, NO ACCIDENT TO REPORT (NHTSA ID 10876088, 2016 Ford F-150, Complaint Date June 23, 2016)

BRAND NEW KING RANCH FORD F-150 BRAKES RECURRENTLY FAIL. NO ACCIDENT BUT THEY CURRENTLY HAVE GREATLY REDUCED STOPPING POWER, SUPER DANGEROUS. FORD REPORTS LONG BACK ORDER 3+WEEKS ON MASTER CYLINDER, MAKES ME WONDER IF THERE IS LARGER ISSUE. (NHTSA ID 10882378, 2016 Ford F-150, Complaint Date July 3, 2016)

MY BRAKES FAILED, COULD BARELY STOP TRUCK AT STREET INTERSECTION.. WAS ABLE TO MAKE IT TO DEALERSHIP. BRAKES WERE NON RESPONSIVE AND THEN BACK TO SEMI RESPONSIVE. (NHTSA ID 10883442, 2016 Ford F-150, Complaint Date July 7, 2016)

SUDDEN AND COMPLETE FAILURE OF THE BRAKING SYSTEM. THE PEDAL WENT TO THE FLOOR AND CONTINUOS PUMPING DID VERY LITTLE TO STOP THE VEHICLE. IT WAS IMMEDIATELY TAKEN TO SARASOTA FORD IN SARASOAT FL. (NHTSA ID 11001706, 2017 Ford F-150, Complaint Date June 27, 2017)

PURCHASED VEHICLE ABOUT 2 MONTHS AGO. THIS MORNING I WAS SLOWING THE VEHICLE AT A STOP LIGHT. ONCE PRESSURE WAS APPLIED TO THE PEDAL IT WOULD CONTINUE TO PROGRESS ALL THE WAY TO THE FLOOR. CHECKED BRAKE FLUID AND IT WAS FULL. PROBLEM PERSISTED SO VEHICLE WAS TAKEN TO THE DEALERSHIP. (NHTSA ID 11001996, 2017 Ford F-150, Complaint Date June 28, 2017)

THE VEHICLE WILL NOT STOP COMPLETELY SOMETIMES. OTHER TIMES, THE BRAKE PEDAL IS ALL THE WAY TO THE FLOOR BEFORE THE VEHICLE WILL CEASE MOVEMENT. NO MATTER HOW GREAT OR HOW LITTLE PRESSURE IS APPLIED TO THE BRAKES THE PEDAL WILL GO ALL THE WAY TO THE FLOOR. (NHTSA ID 11002086, 2017 Ford F-150, Complaint Date June 29, 2017)

I WAS DRIVING AND WHEN I NEED TO MAKE A HARD STOP, THE BRAKE PEDAL WENT TO THE FLOOR. I HAD TO USE THE EMERGENCY BRAKE TO HELP SLOW ME DOWN. WHILE THERE IS SOME BRAKING, IF YOU ARE STOPPED AND PUSH HARD ON THE BRAKES, THE PEDAL GOES TO THE FLOOR. (NHTSA ID 11010500, 2017 Ford F-150, Complaint Date July 25, 2017)

THE BRAKES WENT COMPLETELY OUT. THEY REPLACED THE MASTER CYLINDER, UPON GETTING IT BACK THE BRAKES FAILED TO STOP ADEQUATELY, AND IT WAS RETURNED AT THAT MOMENT. THEY "BLED THE BRAKES" AGAIN AND RETURNED IT. THERE WAS ONLY 1 WORK ORDER FOR THIS. THE TRUCK SAT FOR A WEEK AND NOT THE BRAKES ARE SOFT AND INCONSISTENT. I RETURNED IT TO FORD AND THEY STATED IT WAS WORKING AS

EXPECTED; HOWEVER IN A PANIC STOP THE BRAKES FAILED TO DO MORE THAN 50% STOP EFFORT AND ON ANOTHER OCCASION I PRESSED THE PEDAL TO THE FLOOR, AND HAD HARDLY ANY BRAKE. I TOOK IT BACK TO THE FORD DEALER AND THEY SAID THERE WAS NOTHING WRONG. SINCE THEY DID NOT TAKE IT IN FOR SERVICE THERE IS NO RECORD OF THIS THIRD ATTEMPT TO GET THE BRAKES FIXED. I THEN CALLED THE FORD CUSTOMER SERVICE LINE AND THEIR ANSWER IS JUST TO TAKE IT SOMEWHERE ELSE. THIS VEHICLE IS DANGEROUS AND IT FALLS OUTSIDE THE RECALL NOTICE FOR A REPLACEMENT MASTER CYLINDER. HOWEVER THAT IS THE INITIAL FAILURE. I SUSPECT ADDITIONAL ISSUES; BUT FORD IS FAILING TO ADDRESS THEM. (NHTSA ID 11015427, 2017 Ford F-150, Complaint Date August 15, 2017)

ON 08/07/2017 WHILE TRAVELING APPROXIMATELY 55 MILES PER HOUR ON HIGHWAY 281 IN SAN ANTONIO, TX MY 2017 FORD F-150, V8 SUPER CREW, 4X4 FTX EXPERIENCED COMPLETE BRAKE FAILURE. MY BRAKES WENT TO THE FLOOR WITH NO BRAKE ACTIVATION AND I HAD TO SWERVE TO THE LEFT TWO LANES TO AVOID IMPACTING THE VEHICLES IN FRONT OF ME. ONCE ON THE SHOULDER I HAD TO PUMP THE BRAKES IN ORDER TO STOP AFTER TRAVELLING SEVERAL HUNDRED YARDS. THERE WAS ABSOLUTELY NO WARNING (NOISE, SERVICE LIGHTS, ETC.) PRIOR TO, DURING OR AFTER THE BRAKE FAILURE. THE VEHICLE WAS ONLY FOUR MONTHS OLD WITH 6400 MILES ON IT. IF THERE WAS NO SHOULDER OR CLEAR LANES IT WOULD HAVE CAUSED A SEVERE ACCIDENT LIKELY RESULTING IN INJURIES. I WAS ABLE TO SLOWLY AND CAREFULLY MAKE MY WAY TO THE DEALERSHIP ON SIDE ROADS BUT EXPERIENCED TOTAL BRAKE FAILURE THREE ADDITIONAL TIMES. THE FIRST TIME WAS WHILE I WAS STATIONARY AT A STOP SIGN FACING SLIGHTLY DOWNHILL MY BRAKE PEDAL WENT COMPLETELY TO THE FLOOR AND I HAD TO PUMP IT SEVERAL TIMES TO MAKE THE VEHICLE STOP AGAIN. THE OTHER TWO TIMES I WAS TRAVELING APPROXIMATELY 25 MILES PER HOUR AND MISSED MY TURN (RIGHT) AND PROCEEDED PAST THE

TURN APPROXIMATELY 50 YARDS AND HAD TO PUMP THE BRAKES IN ORDER TO STOP. THE DEALERSHIP HAD TO REMOVE AND REPLACE THE MASTER BRAKE CYLINDER. THEY INDICATED IT WAS LEAKING INTERNALLY AND GAVE NO EXPLANATION WHY A SERVICE LIGHT OR OTHER WARNING DID NOT COME ON AND THERE IS NO CURRENT RECALL FOR THAT PART. (NHTSA ID 11021717, 2017 Ford F-150, Complaint Date September 6, 2017)

I GOT IN MY TRUCK AND STARTED DRIVING. AS I APPROACHED THE INTERSECTION I STARTED TO BRAKE. THE BRAKES WENT ALL THE WAY DOWN AND THE TRUCK DID NOT BRAKE. I ENDED UP PAST THE STOP SIGN IN THE MIDDLE OF THE INTERSECTION. I TURNED AROUND AND WENT BACK SLOWLY TO MY HOUSE. I ALMOST HIT A PEDESTRIAN WHERE THE TRUCK DID NOT BRAKE. (NHTSA ID 11045017, 2017 Ford F-150, Complaint Date November 9, 2017)

MY TRUCK HAS 19600 MILES ON IT, SINCE LAST 2 DAYS THE BRAKE PEDAL WHEN PRESSED WOULD GO ALL THE WAY TO THE FLOOR WHILE DRIVING, DOESN'T MATTER CITY OR HIGWAY. I HAVE DROPPED TO THE DEALERSHIP YESTERDAY, THEY ARE STILL TRYING TO FIGURE OUT THE PROBLEM (NHTSA ID 11150654, 2018 Ford F-150, Complaint Date November 9, 2018)

DECELERATING TO A STOP, I APPLIED BRAKES WITH NORMAL PRESSURE BUT TRUCK DID NOT SLOW DOWN. BRAKE PEDAL FELT SOFT AND I HAD TO STAND ON IT VERY HARD TO STOP TRUCK. AFTER COMING TO A STOP AND RELEASING BRAKE PEDAL, BRAKE PEDAL AND BRAKE OPERATION FELT NORMAL AFTERWARDS. ROAD CONDITIONS WERE DRY ASPHALT. (NHTSA ID 11161167, 2018 Ford F-150, Complaint Date December 13, 2018)

TRUCK WAS MOVING STRAIGHT FORWARD AT 10MPH ON A SUBURBAN STREET, BRAKE PEDAL DEPRESSED ALL THE WAY TO THE FLOOR, VEHICLE DID NOT STOP. NO BRAKE FLUID LEAK APPARENT, RESERVOIR FOR BRAKE FLUID IS SLIGHTLY OVER FULL. SUSPECT FAULTY MASTER

CYLINDER. (NHTSA ID 11165517, 2018 Ford F-150, Complaint Date January 6, 2019)

I WAS DRIVING AND HAD TO COME TO A QUICK STOP AND MY BRAKE PEDAL FELT LOOSE LIKE THERE WAS NO PRESSURE BEHIND IT, ALMOST CRASHED. IT FELT LIKE THE PEDAL WENT TO THE FLOOR (NHTSA ID 11204187, 2018 Ford F-150, Complaint Date April 27, 2019)

MY F150 2019 WHEN COMING TO THE STOP BRAKE PEDAL IS GOING DOWN AND WHEN HOLDING THE BRAKE PEDAL AT THE LIGHT IT GOING SLOWLY TO THE FLOOR. OVER ALL THE BRAKE PEDAL IS BEHAVING DIFFERENTLY EACH TIME I USE THE BRAKES ALTHOUGH EACH TIME THE BRAKE PEDAL IS GOING TOWARD THE FLOOR SLOWLY. TAKEN TO FORD DEALER AND I WAS TOLD THIS IS NORMAL. I ALMOST REAR-ENDED SOMEONE SO TODAY I TOOK THE VEHICLE SECOND TIME TO ANOTHER FORD DEALER AND NOW WAITING FOR THE OUTCOME. THIS IS VERY UNSAFE DRIVING SUCH A LARGE VEHICLE WITH THIS TYPE OF BRAKE BEHAVE. TRUCK HAVE ONLY LESS THAN 12000 MILES. *TR (NHTSA ID 11327803, 2019 Ford F-150, Complaint Date June 8, 2020)

VEHICLE CURRENTLY HAS 8600MILES ON IT. THE BRAKES HAVE FAILED 4 TIMES. THE FIRST WAS REPAIRED BY RESURFACING ROTORS WHICH LASTDE LESS THAN 300 MILES. 2ND ATTEMPT ROTORS AND PADS WERE REPLACED WHICH FAILED IN LEASS THAN 200 MILES. RETURNED ATWICE SINCE THEN FOR ROTOR RESURFACE. DEALR DOES NOT KNOW WHY BRAKES ARE FAILING/ FORD REFUSES TO PROVIDE EXPLANATION OR ASSURE THIS WONT CONTINUE (NHTSA ID 11367059, 2019 Ford F-150, Complaint Date October 29, 2020)

I WAS DRIVING APPROXIMATELY 35MPH. I BRAKED HARD ENOUGH TO SLOW DOWN TO AVOID HITTING A CAR THAT BLEW THROUGH AN INTERSECTION. THAT'S WHEN MY BRAKES BECAME SOFT, AND THE BRAKE PEDAL WENT ALL THE WAY TO THE FLOOR. THE TRUCK HAD LIMITED

BRAKING AT THAT POINT. I WAS ABLE TO CONTINUE DRIVING FOR A BIT. THE BRAKES WOULD INITIALLY HAVE SOME BRAKING POWER WHEN I FIRST APPLY THE BRAKE, BUT WITHIN SECONDS THE BRAKE PEDAL WOULD GO ALL THE WAY TO THE FLOOR AGAIN. AFTER BRAKING SEVERAL MORE TIMES, THE LOW BRAKE FLUID MESSAGE CAME ON. I OPENED THE HOOD, AND YOU CAN SEE FLUID HAS LEAKED ON THE PASSENGER SIDE NEAR THE FIREWALL. (NHTSA ID 11495716, 2019 Ford F-150, Complaint Date December 1, 2022)

BRAKE LIGHT COMES ON WHILE DRIVING THEN NO BRAKES! UNLESS YOU PUSH THE PEDAL REAL HARD THEN IT MAKES A GRINDING SOUND! WHEN YOU STOP VEHICLE STOP THE ENGINE AND LET IT SIT FOR A FEW MINUTES, THEN START IT, THE BRAKE LIGHT STAYS OFF AND EVERYTHING WORKS FINE AGAIN! THIS HAPPENED TWICE! THE FIRST TIME WAS MARCH 2018 WE THEN TOOK TO DEALER AND THEY CHARGED TO INSTALL NEW BOOSTER AND SOME OTHER DEVICE. TODAY JAN 4TH 2019 THE SAME THING HAPPENED! (NHTSA ID 11165286, 2015 Ford Expedition, Complaint Date January 4, 2019)

SAME MASTER CYLINDER FAILURE ON MY EXPEDITION THAT WAS ISSUED A RECALL FOR THE F150. (NHTSA ID 11338548, 2015 Ford Expedition, Complaint Date July 10, 2020)

OUR VEHICLE EXPERIENCED TOTAL FAILURE OF THE BREAK MASTER CYLINDER AND BREAK BOOSTER. THIS WAS DUE TO BREAK FLUID LEAKING INTO THE BRAKE BOOSTER FROM THE MASTER CYLINDER, DEPLETING THE BREAK FLUID RESERVOIR RENDERING THE BREAK SYSTEM COMPLETELY INOPERABLE. THERE WERE NO WARNINGS BEFORE THIS TOOK PLACE. THE VEHICLE WAS IN MOTION WHEN THE FAILURE TOOK PLACE. THERE IS A SIMILAR RECALL ON THE FORD F-150 WHICH USES THE SAME PARTS AS THE EXPEDITION. RECALL # 20S31. WE HAVE ATTACHED ALL DOCUMENTATION OF THE REPAIR. (NHTSA ID 11340969, 2015 Ford Expedition, Complaint Date July 22, 2020)

WIFE WAS DRIVING HOME FROM WORK WHEN THE "LOW BRAKE FLUID" WARNING LIGHT CAME ON GOING 45 MPH. LESS THAT ONE MINUTE LATER WHEN SHE WENT TO STOP AND THE BRAKE PEDAL WENT TO THE FLOOR AND THE VEHICLE WOULD NOT SLOW DOWN. THANKFULLY SHE WAS GOING UP HILL AND ABLE TO GET THE VEHICLE TO STOP SAFELY. CHECKED THE BRAKE MASTER CYLINDER RESERVOIR AND THERE WAS NO FLUID IN IT. CHECKED THE BRAKE MASTER CYLINDER FOR VISIBLE LEAKS AND DID NOT SEE ANY FLUID. (NHTSA ID 11102950, 2016 Ford Expedition, Complaint Date June 21, 2018)

WHIE DRIVING 2016 EXPEDITION EL THE LIGHT CAME ON SAYING THAT THE BRAKE FLUID WAS LOW SHORTLY AFTER THE BRAKES WENT OUT COMPLETELY ,PEDAL WENT TO FLOOR.THANKFULLY USED THE EMERGENCY BRAKE AND DOWN SHIFTING TO GET CAR STOPPED .WAS VERY FORTUNATE.MY MECHANIC CHECKED CAR -NO LEAKS OF BRAKE FLUID EVEN THOU THE SYSTEM WAS COMPLETELY EMPTY.HIS DIAGNOSIS WAS THAT THE BRAKE BOOSTER HAD FAILED AND THAT ALL OF THE BRAKE FLUID WAS SYPHONED OUT AND IN TO THE ENGINE. VERY SCARY LITTLE WARNING JUST COMPLETE FAILURE (NHTSA ID 11102612, 2016 Ford Expedition, Complaint Date June 19, 2018)

APPROXIMATELY 21000 MILES, SUDDEN AND COMPLETE BRAKE FAILURE WHILE DRIVING THE VEHICLE. A WARNING MESSAGE WAS DISPLAYED ON THE DASH "LOW BRAKE FLUID". I TOUCHED THE BRAKE PEDAL AND IT DEPRESSED COMPLETELY TO THE FLOOR. I INSPECTED THE VEHICLE, NO VISIBLE LEAKS AT ANY OF THE WHEELS OR IN THE ENGINE BAY. BRAKE FLUID RESERVOIR WAS EMPTY. REFILLED RESERVOIR ONLY TO WATCH IT DRAIN WITH NO VISIBLE LEAKS (INTO THE BOOSTER?) (NHTSA ID 11098198, 2016 Ford Expedition, Complaint Date May 27, 2018)

106.    As the above sampling of complaints makes clear, consumers have been

vocal in complaining to NHTSA ODI about the Brake System Defect and Ford was,

or should have been, aware of and monitoring those complaints, and should have known about the Brake System Defect.

107.  Also within NHTSA's official complaint registry is evidence of the frequency at which the Brake System Defect manifests soon after Class Vehicles enter service, as the above complaints demonstrate. Moreover, Appendix G of Ford's submission to NHTSA reflects that the Brake System Defect often manifests within the first year to 18 months of service.

108.  In sum, as early as 2013, and certainly well before Plaintiff and Class members purchased or leased their Class Vehicles, Ford was aware of the Brake System Defect, should have been aware of the Brake System Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the Brake System Defect, based on, among others, the following sources:

a.  Pre-release design, manufacturing, engineering, and testing data;

b.  Detailed data gathered by Ford about the large number of Brake System Defect repairs;

c.  Knowledge Ford had of the large number of replacement Brake System parts ordered from Ford;

d.  Numerous and consistent consumer complaints made directly to Ford about the Brake System Defect;

e.      Numerous and consistent consumer complaints collected by NHTSA ODI about the Brake System Defect;

f.      Ford service center employees' familiarity with and knowledge of the Brake System Defect.

109. Moreover, the large number and consistency of Class member complaints describing the Brake System's propensity to leak brake fluid, lose hydraulic pressure, and experience brake failure underscores the fact that Class members considered the Brake System Defect to be a material safety issue to the reasonable consumer.

### D.    <u>Ford Admits the Brake System Defect, But Issues an Inadequate Recall.</u>

110. Ford's Recalls are limited to a subset of model year 2013-2017 F-150 trucks and 2016-2017 Ford Expedition and Lincoln Navigator vehicles equipped with the 3.5L GTDI engine. Ford's Recalls are inadequate.

111. First, Ford's Recalls excluded all other F-150 trucks equipped with other engine packages that use the same or substantially similar Hitachi-made stepped bore master cylinder. As Ford's internal data and communications and the above NHTSA complaints represent, all Class Vehicles suffer from the Brake System Defect.

112.   Second, Ford's Recalls fail to address the bypass failure mode. As a result, all Class Vehicles are operating on public roads with woefully deficient and dangerous Master Cylinders.

113.   Third, nothing in the terms of the Recalls indicate that Ford intends to reimburse Plaintiff and Class members for the past costs incurred for the replacement of defective Brake Systems or for replacement of defective Brake Systems in Class Vehicles not included in the limited recall.

### E.   **Ford Received Pre-Suit Notice.**

114.   Plaintiff provided Ford with written notice of the Brake System Defect in the Class Vehicles, and its corresponding breach of warranty, through a notice letter delivered by courier on October 18, 2022, to Ford's registered agent in Montgomery, Alabama. Ford acknowledged receipt through a response letter from its counsel dated December 16, 2022.

115.   Additionally, Ford was provided notice of the alleged defect through numerous complaints filed against it, service requests it received from Class members, Ford's own warranty claims, customer complaint data, parts sales data, as well as internal knowledge derived from testing and internal expert analysis.

116.   Further, Ford has refused to provide an adequate warranty repair for the Brake System Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty

repair due to Master Cylinder failure have simply been provided replacement defective Master Cylinders.

## V.   **APPLICABLE WARRANTIES**

117.   Ford sold and leased the Class Vehicles with a written express warranty covering the Vehicles for three years or 36,000 miles, whichever comes first.

118.   Ford's New Vehicle Limited Warranty expressly states that Ford will "without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" so long as the Vehicle is properly operated and maintained and taken to a Ford dealership for repair within the warranty period.

119.   For certified pre-owned ("CPO") Vehicles, Ford offers a limited warranty covering CPO Vehicles for 12 months or 12,000 miles, whichever comes first.

120.   Ford's CPO Vehicle warranty states that a dealer will replace "all covered components . . . that are found to be defective in factory-supplied materials or workmanship during the applicable warranty periods." The brake master cylinder and other Brake System parts are included in Ford's list of "covered components."

121.   Ford provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicle is completed; buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

122.   Ford also sells replacement parts, including Brake System components, through its Motorcraft parts brand.

123.   Ford provides an express written warranty with all new Ford and Motorcraft replacement parts. That warranty provides that for parts sold on or after October 1, 2013, parts found to be defective in factory-supplied material or workmanship will be repaired, replaced, or exchanged within 24 months of part purchase, regardless of the number of miles driven.

124.   Ford is the drafter of the warranties it provides to consumers nationwide, and the terms of the warranties unreasonably favor Ford. Consumers are not given a meaningful choice in the terms of the warranties provided by Ford, and those warranties are offered on a "take it or leave it" basis. A gross disparity in bargaining power existed between Ford and the Class members, and Ford knew or should have known that the Class Vehicles were defective at the time of sale.

## VI.   FORD'S MARKETING AND CONCEALMENT

125.   Ford knowingly marketed and sold/leased the Class Vehicles with the Brake System Defect, while willfully concealing the true inferior quality and substandard performance of the Class Vehicles' Brake Systems.

126.   Ford directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

127.   Ford's marketing material describes the Class Vehicles as "tough" and meeting "rigorous Ford standards for quality, durability and dependability."

128.   In practice, the Class Vehicles are not as tough, durable, and dependable as Ford's marketing suggests. Ford concealed the fact that the Class Vehicles are equipped with defective Brake Systems that leak brake fluid, lose hydraulic pressure, and experience sudden and unexpected brake failure.

129.   Plaintiff and Class members were exposed to Ford's long-term, national, multimedia marketing campaign touting the supposed quality, safety, and comfort of the Class Vehicles, and Class Members justifiably made their decisions to purchase or lease their Class Vehicles based on Ford's misleading marketing that concealed the true, defective nature of the Class Vehicles.

130.   Further, Ford knowingly misled Class members about the true, defective nature of the Class Vehicles. As detailed above, Ford has been aware of the Brake System Defect since at least 2013, and certainly well before Plaintiff and Class members purchased or leased their Class Vehicles, through pre-release evaluation and testing; the high number of Brake System repairs and replacement

part sales; and the numerous and consistent complaints about the Brake System

Defect collected by NHTSA.

131.    In sum, Ford has actively concealed the existence and nature of the

Brake System Defect from Class members since at least 2013 despite its knowledge

of the existence and pervasiveness of the Brake System Defect. Specifically, Ford

has:

> a.    Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Brake System Defect;

> b.    Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' Brake Systems were defective and not fit for their intended purposes;

> c.    Failed to disclose, and actively concealed, the fact that the Class Vehicles' Brake Systems were defective, despite that Ford learned of the Brake System Defect as early as 2013, and certainly well before Plaintiff and Class members purchased or leased their Class Vehicles;

> d.    Failed to disclose, and actively concealed, the existence and pervasiveness of the Brake System Defect even when directly asked about it by Class members during communications with Ford, Ford dealerships, and Ford service centers;

e.      Actively concealed the Brake System Defect by forcing Class members to bear the cost of temporary "fixes" that merely replaced the defective brake master cylinder with another defective part.

132.   By engaging in the conduct described above, Ford has concealed, and continues to conceal, the Brake System Defect from Class members. If Class members had knowledge of the information Ford concealed, they would not have purchased or leased the Class Vehicles or would have paid less to do so.

## VII.   FRAUDULENT CONCEALMENT ALLEGATIONS

133.   Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Ford responsible for disseminating false and misleading marketing materials regarding the Class Vehicles. Ford necessarily is in possession of all of this information. Plaintiff's claims arise out of Ford's fraudulent concealment of the Brake System Defect, and its representations about the quality, safety, and comfort of the Class Vehicles. Plaintiff's claims of fraudulent concealment arise from, *inter alia*, Ford's May 25, 2016, Press Release[4] and September 29, 2016, Recall Letter.[5]

134.   Plaintiff alleges that at all relevant times, including specifically at the time he and other members of the proposed Classes purchased or leased their Class

_____

[4] *See* Ex. A.
[5] *See* Ex. B.

Vehicles, Ford knew, or was reckless in not knowing, of the Brake System Defect; Ford was under a duty to disclose the Brake System Defect based upon its exclusive knowledge of it, and its concealment of it; and Ford never disclosed the Brake System Defect to Plaintiff or the public at any time or place or in any manner other than a halfhearted, inadequate recall of a small subset of the Class Vehicles.

135.   Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Ford:

a.   ***Who***: Ford actively concealed the Brake System Defect from Plaintiff and Class members while simultaneously touting the safety, comfort, and quality of the Class Vehicles, as alleged in paragraphs 125-132, above. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Ford responsible for such decisions.

b.   ***What***: Ford knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Brake System Defect, as alleged above in paragraphs 77-113. Ford concealed the Brake System Defect and made representations about the safety, comfort, world-class quality, and other attributes of the Class Vehicles, as specified above in paragraphs 125-132.

c.   ***When***: Ford concealed material information regarding the Defect at all times and made representations about the quality, safety, and comfort of the

Class Vehicles, starting no later than 2013, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged above in paragraphs 125-132. Ford still has not disclosed the truth about the full scope of the Brake System Defect in the Class Vehicles to anyone outside of Ford. Ford has never taken any action to inform consumers about the true nature of the Brake System Defect in Class Vehicles. And when consumers brought their vehicles to Ford complaining of the Brake System failures, Ford denied any knowledge of or responsibility for the Brake System Defect.

d. *Where*: Ford concealed material information regarding the true nature of the Defect in every communication it had with Plaintiff and Class members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing in which Ford disclosed the truth about the full scope of the Brake System Defect in the Class Vehicles to anyone outside of Ford. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Ford's website.

e. *How*: Ford concealed the Brake System Defect from Plaintiff and Class members and made representations about the quality, safety, and comfort of the Class Vehicles. Ford actively concealed the truth about the existence, scope, and

nature of the Brake System Defect from Plaintiff and Class members at all times, even though it knew about the Brake System Defect and knew that information about the Brake System Defect would be important to a reasonable consumer, and Ford promised in its marketing materials that Class Vehicles have qualities that they do not have.

f. **Why**: Ford actively concealed material information about the Brake System Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, and comfort of the Class Vehicles for the same reasons. Had Ford disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would have paid less for them.

## VIII.  **TOLLING OF THE STATUTE OF LIMITATIONS**

### E.  **Discovery Rule Tolling**

136.  The causes of action alleged herein did not accrue until Plaintiff and Class members discovered that their Class Vehicles contained the Brake System Defect.

137.   Neither Plaintiff nor the members of the proposed Classes could have discovered through reasonable diligence that their Class Vehicles were defective within the time period of any applicable statutes of limitation.

138.   Among other things, neither Plaintiff nor the members of the proposed Classes knew or could have known that the Class Vehicles are equipped with defective Master Cylinders.

### F.   Fraudulent Concealment Tolling

139.   Throughout the time period relevant to this action, Ford concealed from and failed to disclose to Plaintiff and the members of the proposed Classes vital information about the potentially deadly Brake System Defect described herein.

140.   Ford kept Plaintiff and the members of the proposed Classes ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiff nor the members of the proposed Classes could have discovered the Brake System Defect.

141.   Specifically, throughout the relevant time period, Ford has known that the Master Cylinders it installed in the Class Vehicles lose hydraulic pressure and fail.

142.   Despite its knowledge of the Brake System Defect, Ford failed to disclose, concealed, and continues to conceal, this critical information from Plaintiff

and the other members of the Class even though, at any point in time, it could have done so through individual correspondence, media release, or any other means.

143.   Instead of disclosing the Brake System Defect to Plaintiff and the members of the proposed Classes, Ford instituted an inadequate recall, as described above, that deterred further investigation and any adequate remedial action.

144.   Plaintiff and the members of the proposed Classes justifiably relied on Ford to disclose these material defects in the Ford vehicles that they purchased or leased, as such defects were hidden and not discoverable through reasonable efforts by Plaintiff and the members of the proposed Classes.

145.   Thus, the running of all applicable statutes of limitation have been tolled and suspended with respect to any accrued claims of the Plaintiff and the members of the proposed Classes as a result of the Brake System Defect by virtue of the fraudulent concealment doctrine.

### G.   <u>Estoppel</u>

146.   Ford was under a continuous duty to disclose to Plaintiff and the members of the proposed Classes the true character, quality, and nature of the Class Vehicles.

147.   Ford knowingly failed to disclose or concealed the true nature, quality, and character of the Class Vehicles for consumers.

148.   Based on the foregoing, Ford is estopped from relying on any statutes of limitation in defense of this action.

## IX.   CLASS ACTION ALLEGATIONS

149.   Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2) and/or (c)(4), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

150.   Plaintiff seeks to represent a class ("the Nationwide Class") defined as:

> All persons who purchased or leased a Class Vehicle in the United States.

151.   Plaintiff also respectively seeks to represent the following statewide classes ("the Statewide Classes") defined as follows:

> All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Texas ("the Texas Class").

152.   Excluded from both the Nationwide and Statewide Classes are Defendants Ford Motor Company and any of its affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend these Nationwide and Statewide Class definitions as appropriate during the course of this litigation.

153.   The Classes expressly disclaim any recovery in this action for personal injury resulting from the Brake System Defect, without waiving or dismissing any such claims.

154.   This action has been brought and may properly be maintained on behalf of the Nationwide and Statewide Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

155.   **Numerosity — Federal Rule of Civil Procedure 23(a)(1)**. The members of the Nationwide and Statewide Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable. While Plaintiff is informed and believes that there are not less than 1.5 million members of the Nationwide and Statewide Classes, the precise number of Nationwide and Statewide Classes is unknown to Plaintiff, but may be ascertained from Ford's books and records, as well as records from state Departments of Motor Vehicles. Nationwide and Statewide Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

156.   **Commonality and Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Nationwide and Statewide Class members, including, without limitation:

      a.     whether the Brake System in the Class Vehicles is defective;

      b.     whether Ford knew or should have known about the Brake System Defect, and, if yes, how long Ford has known of the Defect;

      c.     whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle;

      d.     whether Ford had a duty to disclose the defective nature of the Class Vehicles to Plaintiff and Class members;

      e.     whether Ford omitted and failed to disclose material facts about the Class Vehicles;

      f.     whether Ford's concealment of the true defective nature of the Class Vehicles induced Plaintiff and Class members to act to their detriment by purchasing or leasing Class Vehicles;

      g.     whether Ford engaged in conduct that was likely to deceive reasonable consumers;

      h.     whether Ford represented, through its words and conduct, that the Class Vehicles had characteristics, uses, benefits, and qualities that they did not actually have;

i.      whether Ford represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another;

j.      whether Ford advertised the Class Vehicles with the intent not to sell/lease them as advertised;

k.      whether Ford represented that its warranties confer or involve rights or remedies which they do not have;

l.      whether Ford failed to disclose information concerning Class Vehicles which Ford knew at the time of the transaction and which Ford failed to disclose with the intent to induce Plaintiff and Class members into a transaction into which they would not have entered had the information been disclosed;

m.      whether Ford's representations and omissions about the true defective nature of the Class Vehicles were likely to create confusion or misunderstanding;

n.      whether Ford's representations and omissions about the true defective nature of the Class Vehicles were and are deceptive;

o.      whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

p.      whether Plaintiff and the members of the proposed Classes are entitled to a declaratory judgment stating that the Brake Systems in Class Vehicles are defective and/or not merchantable;

q.      whether Plaintiff and the members of the proposed Classes are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

r.      whether Ford should be declared financially responsible for notifying all Class members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the Brake System Defect in the Class Vehicles; and

s.      whether Ford is obligated to inform Class members of their right to seek reimbursement for having paid to diagnose, repair, or replace the defective Brake Systems.

157.   **Typicality — Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the other Nationwide and Statewide Class members' claims because Plaintiff and the Nationwide and Statewide Class members purchased or leased Class Vehicles that suffer from the Brake System Defect. Neither Plaintiff nor the other Nationwide and Statewide Class members would have purchased the Class Vehicles, or, alternatively, would have paid less for the Class Vehicles, had they known of the Brake System Defect. Plaintiff and the other Nationwide and

Statewide Class members suffered damages as a direct proximate result of the same wrongful practices in which Ford engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Nationwide and Statewide Class members.

158. **Adequacy of Representation — Federal Rule of Civil Procedure 23(a)(4)**. Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Nationwide and Statewide Classes that he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The Nationwide and Statewide Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

159. **Declaratory and Injunctive Relief — Federal Rule of Civil Procedure 23(b)(2)**. Ford has acted or refused to act on grounds generally applicable to Plaintiff and the other Nationwide and Statewide Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide and Statewide Class members as a whole.

160. **Superiority — Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered

by Plaintiff and the other Nationwide and Statewide Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Ford, so it would be impracticable for the Nationwide and Statewide Class members to individually seek redress for Ford's wrongful conduct. Even if the Nationwide and Statewide Class members could afford piecemeal litigation, the court system could not. Because of the relatively small size of the individual Class members' claims (compared to the cost of litigation), it is likely that only a few Class members could afford to seek legal redress for Ford's misconduct. Absent a class action, Class members will continue to incur damages, and Ford's misconduct will continue without remedy. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Class treatment of common questions of law and fact would be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

161. **Issues Class.** Alternatively, Plaintiff seeks certification pursuant to Federal Rule of Civil Procedure 23(c)(4) on behalf of the above defined classes for

some or all the issues identified in the commonality and predominance section, above, as we as other issues which may be later identified.

## X.   CLAIMS FOR RELIEF

### A.   Claims Brought on Behalf of the Nationwide Class

#### COUNT 1
#### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
#### 15 U.S.C. §§ 2301, ET SEQ.

162.   Plaintiff incorporates by reference each allegation set forth in paragraphs 1-161.

163.   Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

164.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

165.   Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

166.   Ford is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

167.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

168.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

169.   In its Limited Warranty, Ford expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. Ford provides the following language in its F-150 Owner's Manual, which is substantially identical for all models:

> Your Bumper to Bumper Coverage lasts for three years-unless you drive more than 36,000 miles before three years elapse. In that case, your coverage ends at 36,000 miles .... Your NEW VEHICLE LIMITED WARRANTY gives you specific legal rights ....Under your New Vehicle Limited Warranty if: your Ford vehicle is properly operated and maintained, and was taken to a Ford dealership for a warranted repair during the warranty period, then authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship.

170.   Ford's Limited Warranty is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

171.   With respect to Class members' purchases or leases of the Class Vehicles, the terms of Ford's written warranty and implied warranty became part of the basis of the bargain between Ford, on the one hand, and Plaintiff and each of the members of the proposed Classes, on the other.

172.   Ford breached the implied warranty of merchantability. Without limitation, the Class Vehicles have brakes that lose hydraulic pressure and fail, as described above, and which thus render the Class Vehicles unmerchantable.

173.   Ford breached its express Limited Warranty by refusing to repair the defective Master Cylinder in the Class Vehicles.

174.   As alleged herein, Plaintiff provided notice of his and the Class claims to Ford by letter served on October 18, 2022, which Ford acknowledged on December 16, 2022. Plaintiff thus provided pre-suit notice pursuant to 15 U.S.C. § 2310(e). Ford was also provided notice of the Brake System Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

175.   Further, Ford has refused to provide an adequate warranty repair for the Brake System Defect, thus rendering the satisfaction of any notice requirement or informal dispute resolution procedure futile. As stated above, customers that presented their Class Vehicles for warranty repair due to Master Cylinder failure have been provided replacement Master Cylinders that are equally defective.

176.   At the time of sale or lease of each Class Vehicle, Ford knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Brake System Defect. Under the circumstances, the remedies available under any

informal settlement procedure would be inadequate, and any requirement that Plaintiff and the members of the proposed Classes resort to an informal dispute resolution procedure and/or afford Ford a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

177.   The amount in controversy of Plaintiff's individual claim meets or exceeds the sum of $25. The amount in controversy in this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

178.   As a direct and proximate result of Ford's breaches of its Limited Warranty and the implied warranty of merchantability, Plaintiff and the members of the proposed Classes have sustained damages in an amount to be determined at trial.

179.   Plaintiff, individually and on behalf of all the members of the proposed Classes, seeks all damages permitted by law, including the diminution in value of their vehicles, in an amount to be proven at trial.

### B.   Claims Brought on Behalf of the Texas Class

**COUNT 2**
**VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES –**
**CONSUMER PROTECTION ACT**
**TEX. BUS. & COM. CODE §§ 17.01, *ET SEQ.***

180.   Plaintiff incorporates by reference each allegation set forth in paragraphs 1-161.

181.   Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

182.   The Texas Deceptive Trade Practices—Consumer Protection Act ("TDTPA") states that it is unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.

183.   As alleged herein, Plaintiff provided notice of his claims to Ford by letter served on October 18, 2022,[6] which Ford acknowledged on December 16, 2022. Plaintiff thus complied with the TDTPA's notice requirement by providing written notice to Ford more than sixty days prior to commencing this action.  *See* Tex. Bus. & Com. Code § 17.505(a). Ford was also provided notice of the Brake System Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

184.   By the conduct alleged in detail above and incorporated herein, Ford engaged in false, misleading and deceptive trade practices in the conduct of trade or commerce, including by representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, or grade when they are of another; advertising Class Vehicles with the intent not to sell them as advertised; representing that a guaranty

---

[6] Ex. C, Terry Klepac Notice Letter dated October 18, 2022.

or warranty confers or involves rights or remedies which it does not have; failing to disclose information concerning Class Vehicles which Ford knew at the time of the transaction, and which Ford failed to disclose with the intent to induce Plaintiff and Class members into a transaction into which they would not have entered had the information been disclosed; and otherwise engaging in conduct likely to deceive.

185.    Ford's omissions regarding the Brake System Defect, described above, which causes the brakes to lose hydraulic pressure and fail, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

186.    The Brake System Defect constitutes a safety issue that triggered Ford's duty to disclose the safety issue to consumers, as set forth above.

187.    Ford should have disclosed this information because it was in a superior position to know the true facts related to the Brake System Defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to the Defect.

188.    Ford intended for Plaintiff and the other Class members to rely on Ford's omissions regarding the Brake System Defect.

189.    Plaintiff and the other Class members justifiably acted or relied to their detriment upon Ford's omissions of fact concerning the above-described Brake

System Defect, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

190.   Had Ford disclosed all material information regarding the Brake System Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

191.   Ford's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

192.   As a direct and proximate result of Ford's deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Brake System Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under the TDTPA.

**COUNT 3**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**TEX. BUS. & COM. CODE §§ 2.314 AND 2A.212**

193. Plaintiff incorporates by reference each allegation set forth in paragraphs 1-161.

194. Plaintiff brings this Count individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

195. Ford is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104 and 2A.103.

196. Pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

197. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Brake System Defect which causes the Class Vehicles' brakes to lose hydraulic pressure and fail. The Brake System Defect is latent and was present at the time of the sale/lease, and therefore the Vehicles were not merchantable at the time of the sale/lease.

198.   Plaintiff notified Ford of the Brake System Defect in the Class Vehicles, and its corresponding breach of warranty, through a notice letter delivered by courier on October 18, 2022 to Ford's registered agent in Montgomery, Alabama. Ford acknowledged receipt through a response letter from its counsel dated December 16, 2022. Ford was also provided notice of the Brake System Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Ford has not remedied its breach.

199.   Further, Ford has refused to provide an adequate warranty repair for the Brake System Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that presented their Class Vehicles for warranty repair due to Master Cylinder failure have been provided replacement Master Cylinders that are equally defective.

200.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Ford's breach of the warranty of merchantability.

201.   Had the Brake System Defect that existed at the time of sale/lease been known, the Class Vehicles would not have been sold or leased, or would not have been sold or leased at the same price for which Class Members paid.

202.   As a direct and proximate result of Ford's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT 4
## FRAUDULENT OMISSION

203.   Plaintiff incorporates by reference each allegation set forth in paragraphs 1-161.

204.   Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

205.   Ford was aware of the Brake System Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

206.   Having been aware of the Brake System Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Brake System Defect, Ford had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

207.   Further, the Brake System Defect constitutes a safety issue that triggered Ford's duty to disclose the safety issue to consumers, as set forth above.

208.   Ford did not disclose the Brake System Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

209.   For the reasons set forth above, the Brake System Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

210.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Ford to disclose known material defects with respect to the Class Vehicles.

211.   Had Plaintiff and the other members of the Class known of the Brake System Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

212.   Through its omissions regarding the Brake System Defect within the Class Vehicles, Ford intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

213.   As a direct and proximate result of Ford's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Brake System Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 5
## UNJUST ENRICHMENT

214.   Plaintiff incorporates by reference each allegation set forth in paragraphs 1-161.

215.   Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

216.   Ford has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Ford's concealment of the Brake System Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

217.   Ford has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

218.   It is inequitable and unconscionable for Ford to retain these benefits.

219.   Because Ford concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

220.   Ford knowingly accepted the unjust benefits of its wrongful conduct.

221.   As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

## XI.    RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Nationwide and Texas Classes, respectfully requests that the Court enter judgment in his favor and against Defendant Ford Motor Company as follows:

a.    an order certifying the proposed Nationwide and Texas Classes as requested herein, designating Plaintiff as named representative of the Classes, and designating the undersigned as Class Counsel;

b.    a declaration that the Brake Systems in the Class Vehicles are defective;

c.    a declaration that Ford is financially responsible for notifying all Class members about the defective nature of the Class Vehicles;

d.    an order enjoining Ford from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles;

e.    an order requiring Ford to permanently repair the Class Vehicles, within a reasonable time period and at no cost to Class members, so that they no longer possess the Brake System Defect;

f.    an award to Plaintiff and Class members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

g.      an order that Ford must disgorge, for the benefit of Plaintiff and

Class members, all or part of the ill-gotten profits it received from the sale or lease

of the Class Vehicles, or make full restitution to Plaintiff and Class members;

h.      an award of attorneys' fees and costs, under Tex. Bus. & Com.

Code § 17.46 and as otherwise allowed by law;

i.      an award of pre-judgment and post-judgment interest, as

provided by law;

j.      leave to amend this Complaint to conform to the evidence

produced at trial; and

k.      such other relief as may be appropriate under the circumstances.

## XII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


 Dated:  March 15, 2023            Respectfully submitted,


                                  By:   *E. Powell Miller*
                                  E. Powell Miller (P39487)
                                  Sharon S. Almonrode (P33938)
                                  Dennis A. Lienhardt (P81118)
                                  THE MILLER LAW FIRM PC
                                  950 West University Drive,
                                  Rochester, Michigan 48307
                                  (248) 841-2200
                                  epm@millerlawpc.com
                                  ssa@millerlawpc.com
                                  dal@millerlawpc.com

Melvin Butch Hollowell, Jr. (P37834)
THE MILLER LAW FIRM PC
1001 Woodward Avenue, Suite 850
Detroit, Michigan 48226
(313) 483-0880
mbh@millerlawpc.com

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
J. Mitch Williams
Dylan T. Martin
Rebecca D. Gilliland
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
272 Commerce Street Montgomery, Alabama
36104
(334) 269-2343
dee.miles@beasleyallen.com
clay.barnett@beasleyallen.com
mitch.williams@beasleyallen.com
dylan.martin@beasleyallen.com
Rebecca.gilliland@beasleyallen.com

Adam J. Levitt
John E. Tangren
Daniel R. Ferri
Blake Stubbs
DICELLO LEVITT LLC
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com
bstubbs@dicellolevitt.com

Mark P. Chalos
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

222 2nd Ave S, Suite 1640
Nashville, TN  37201-2379
(615) 313-9000
mchalos@lchb.com

Annika K. Martin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013
(212) 355-9500
jselbin@lchb.com
akmartin@lchb.com

Phong-Chau G. Nguyen
Nicholas R. Hartmann
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, California 94111
(415) 956-1000
pgnguyen@lchb.com
nhartmann@lchb.com

*Plaintiff's Counsel*